UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THOMAS MUSHROOM & SPECIALTY, IV, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| VS. | ) ) | CIVIL ACTION NO. |
| AMERICAN INTERNATIONAL GROUP, INC., ET AL., | ) ) ) | 3:21-CV-1783-G |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are the defendants Arthur J. Gallagher Risk Management Services, Inc.'s ("Gallagher") and National Union Fire Insurance Company of Pittsburgh, PA.'s ("NUFIC") (collectively, the "defendants") motions to dismiss the plaintiff Thomas Mushroom & Specialty, IV, Inc.'s ("Thomas Mushroom" or the "plaintiff") fourth amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Arthur J. Gallagher Risk Management Services, Inc.'s Motion to Dismiss Plaintiff's Fourth Amended Complaint for Failure to State a Claim Upon Which

Relief Can Be Granted Pursuant to Federal Rules of Civil Procedure 12(b)(6)

("Gallagher Motion") (docket entry 92); Defendant National Union Fire Insurance

Company of Pittsburgh, PA.'s Motion to Dismiss Plaintiff's Fourth Amended

Complaint and Brief in Support ("NUFIC Motion") (docket entry 94).[1]  For the

reasons set forth below, the defendants' motions are **GRANTED**.

<h1 style="text-align:center">I.  <u>BACKGROUND</u></h1>

### A.  <u>Factual Background</u>

Thomas Mushroom is a Texas corporation with its principal place of business

in Texas that "grows and sells mushrooms and other food ingredients" and "provides

transportation services . . . using [its] own fleet of tractor-trailers."  Plaintiff's Fourth

Amended Complaint ("Complaint") (docket entry 91) at 1-2; Notice of Removal

(docket entry 1) at 2.  Gallagher is a foreign for-profit corporation and insurance

broker with its principal place of business in Illinois.  Complaint at 1-2; Notice of

Removal at 2.  NUFIC is an Illinois company that provides insurance.  Complaint at

1-2.  Thomas Mushroom, through its insurance broker Gallagher, sought to

streamline its insurance coverage by using one company for all of its needs.  *Id.* at 2.

Gallagher explained to Thomas Mushroom that it "could purchase its desired

---

[1]     As it appears from Thomas Mushroom's complaint that its allegations against both defendants stem from the same set of operative facts and it asserts similar causes of actions against both defendants, the court will address the defendants' motions collectively.  *See* Plaintiff's Fourth Amended Complaint (docket entry 91).

multiple lines of insurance from [American International Group, Inc. ("AIG")]." *Id.* Thomas Mushroom purchased this streamlined insurance; however, although at the time Thomas Mushroom contends that it thought it purchased the insurance from AIG, it has since found out that NUFIC issued the insurance. *Id*.

In July 2019, the Department of Transportation ("DOT") sent Thomas Mushroom a notice letter stating that "its previous insurance carrier had notified the DOT that it would no longer be insuring" Thomas Mushroom's fleet. Complaint at 2. Thomas Mushroom subsequently reached out to its point-of-contact at Gallagher, Caleb Cooper ("Cooper"), and forwarded him the DOT's notice letter. *Id.* at 3. Thomas Mushroom contends that Cooper responded "by assuring him that 'we'll handle this with AIG'" and that an NUFIC employee, Renee Salinas ("Salinas"), replied to Cooper's email stating "that she would notify the DOT of the change in insurance coverage." *Id.* Thomas Mushroom, however, avers that neither Cooper, Salinas, or either defendant remedied the situation with the DOT, and, "[c]onsequently, the DOT revoked [Thomas Mushroom's] authority to operate its fleet of tractor-trailers, causing a severe disruption in [its] transportation business and a significant loss of income." *Id.*

### B. Procedural History

Because this case has an extensive history that includes ever changing parties and claims, the court includes a detailed procedural history below.

- 3 -

1. *Original Complaint*

On July 1, 2021, Thomas Mushroom filed its original complaint in the 298th Judicial District Court of Dallas County, Texas.  Plaintiff's Original Petition, *attached to* Index of Documents Filed in State Court Action as Exhibit A, *attached to* Notice of Removal as Exhibit(s) 1 ("Original Petition") at 1.  In it, Thomas Mushroom originally sued AIG and Gallagher, collectively, for breach of express warranty, breach of contract, violation of the Texas Deceptive Trade and Practices Act ("DTPA"), and negligence.  *Id.* at 1, 3-5.  On August 2, 2021, AIG removed the case to this court on the basis of diversity jurisdiction.  Notice of Removal at 2-4.

On February 24, 2022, AIG filed a motion to dismiss, alleging that the court should dismiss the claims that Thomas Mushroom asserts against it for lack of personal jurisdiction and failure to state a claim for relief.  Defendant American International Group, Inc.'s Motion to Dismiss Plaintiff's Petition and Brief in Support (docket entry 17) at 1.  On May 20, 2022, Thomas Mushroom filed an opposed motion for leave to amend its complaint so that it could add NUFIC as a defendant, and on June 27, 2022, the court granted the motion. Plaintiff's Opposed Motion for Leave to Amend Its Complaint to Add National Union Fire Insurance Company of Pittsburgh, PA as a Defendant (docket entry 23) at 1; Order of June 27, 2022 (docket entry 26).

- 4 -

## 2. *First Amended Complaint*

On June 30, 2022, Thomas Mushroom filed its first amended complaint against Gallagher and AIG, and also added NUFIC as a defendant. Plaintiff's First Amended Complaint ("FAC") (docket entry 27) at 1-2. In it, Thomas Mushroom asserted: negligence, breach of contract, and DTPA and insurance code violations claims against AIG; DTPA and insurance code violations, negligence, negligent undertaking, and breach of contract claims against Gallagher; and a DTPA and insurance code violations claim against NUFIC. *Id.* at 3-5. On July 14, 2022, Gallagher filed a motion to dismiss Thomas Mushroom's first amended complaint for failure to state a claim for relief. Arthur J. Gallagher Risk Management Services, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to Federal Rules of Civil Procedure 12(b)(6) (docket entry 31) at 1. On July 20, 2022, Thomas Mushroom filed an unopposed motion for leave to file a second amended complaint, and on July 20, 2022, the court granted the motion. Plaintiff's Unopposed Motion for Leave to Amend its Complaint (docket entry 35); Order of July 20, 2022 (docket entry 36).

## 3. *Second Amended Complaint*

On July 25, 2022, Thomas Mushroom filed its second amended complaint against Gallagher, AIG, and NUFIC, asserting the same claims against each defendant. Plaintiff's Second Amended Complaint (docket entry 37) at 1, 3-6. On

July 29, 2022, Gallagher filed its second motion to dismiss, this time to dismiss Thomas Mushroom's second amended complaint for failure to state a claim for relief. Arthur J. Gallagher Risk Management Services, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to Federal Rules of Civil Procedure 12(b)(6) (docket entry 41) at 1.

On September 23, 2022, AIG filed its second motion to dismiss, also seeking to dismiss Thomas Mushroom's second amended complaint on the grounds that the court does not have personal jurisdiction over AIG and that Thomas Mushroom had failed to state a plausible claim for relief. Defendant American International Group, Inc.'s Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support (docket entry 47) at 1. On September 23, 2022, NUFIC filed a motion to dismiss Thomas Mushroom's second amended complaint, arguing that Thomas Mushroom failed to allege sufficient facts to state a claim for relief and that the statute of limitations barred the claim. Defendant National Union Fire Insurance Company of Pittsburgh, PA.'s Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support ("NUFIC First Motion to Dismiss") (docket entry 49) at 1.

On December 9, 2022, Thomas Mushroom filed an opposed motion for leave to amend its second amended complaint, and on January 4, 2023, the court granted

the motion.  Plaintiff's Opposed Motion for Leave to Amend Its Complaint (docket

entry 56) at 1; Order of January 4, 2023 (docket entry 63).

### 4. *Third Amended Complaint*

On January 4, 2023, Thomas Mushroom filed its third amended complaint

against Gallagher, AIG, and NUFIC, this time asserting:  negligence and DTPA and

insurance code violations claims against AIG; DTPA and insurance code violations,

negligence, negligent undertaking, and breach of contract claims against Gallagher;

and a breach of contract claim against NUFIC.  Plaintiff's Third Amended Complaint

(docket entry 64) at 1, 3-7.

On January 9, 2023, Gallagher filed its third motion to dismiss, seeking

dismissal of Thomas Mushroom's third amended complaint for failure to state a

claim for relief.  Arthur J. Gallagher Risk Management Services, Inc.'s Motion to

Dismiss Plaintiff's Third Amended Complaint for Failure to State a Claim Upon

Which Relief Can Be Granted Pursuant to Federal Rules of Civil Procedure 12(b)(6)

(docket entry 65) at 1.  On January 18, 2023, AIG filed its third motion to dismiss

Thomas Mushroom's third amended complaint, again arguing that Thomas

Mushroom failed to establish that this court has personal jurisdiction over it and that

Thomas Mushroom failed to state a plausible claim for relief.  Defendant American

International Group, Inc.'s Motion to Dismiss Plaintiff's Third Amended Complaint

and Brief in Support (docket entry 67) at 1.  On the same day, NUFIC filed its

second motion to dismiss, which sought dismissal of Thomas Mushroom's third amended complaint for failure to state a claim for relief.  Defendant National Union Fire Insurance Company of Pittsburgh, PA.'s Motion to Dismiss Plaintiff's Third Amended Complaint and Brief in Support (docket entry 69) at 1.

On March 23, 2023, Thomas Mushroom filed an opposed motion for leave to amend its third amended complaint, seeking to drop AIG as a defendant and instead asserting its negligence and DTPA and insurance code violations claims against NUFIC.  Plaintiff's Opposed Motion for Leave to Amend its Complaint (docket entry 81) at 1.  On April 15, 2023, the court granted the motion.  Order of April 15, 2023 (docket entry 90).

5. *Fourth Amended Complaint*

Finally, on April 15, 2023, Thomas Mushroom filed its fourth amended complaint against Gallagher and NUFIC and omitted AIG as a defendant. Complaint at 1.  Thomas Mushroom asserts:  negligence, breach of contract, and DTPA and insurance code violations claims against NUFIC; and DTPA and insurance code violations, negligence, negligent undertaking, and breach of contract claims against Gallagher.  *Id.* at 3-7.  On April 25, 2023, Gallagher filed its fourth and current motion to dismiss the claims that Thomas Mushroom asserts against it in its fourth amended complaint for failure to state a claim for relief.  Gallagher Motion at 1.  On May 1, 2023, NUFIC filed its third and current motion to dismiss the

claims that Thomas Mushroom asserts against it in its fourth amended complaint for failure to state a claim for relief and because certain of the claims are time-barred. NUFIC Motion at 1.

On May 16 and May 22, 2023, respectively, Thomas Mushroom filed its responses to Gallagher and NUFIC's motions to dismiss, arguing that it has pled sufficient facts to state a claim for relief. Plaintiff's Response in Opposition to Defendant Arthur J. Gallagher Risk Management Services, Inc.'s 12(b)(6) Motion to Dismiss Plaintiff's Fourth Amended Complaint ("Thomas Mushroom's Gallagher Response") (docket entry 96) at 3; Plaintiff's Response in Opposition to Defendant National Union Fire Insurance Company of Pittsburgh, PA's 12(b)(6) Motion to Dismiss Plaintiff's Fourth Amended Complaint ("Thomas Mushroom's NUFIC Response") (docket entry 97) at 3. On May 30 and June 5, 2023, respectively, Gallagher and NUFIC filed their replies to Thomas Mushroom's responses. Arthur J. Gallagher Risk Management Services, Inc.'s Reply to Plaintiff's Response in Opposition to Motion to Dismiss Plaintiff's Fourth Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to Federal Rules of Civil Procedure 12(b)(6) (docket entry 98); Defendant National Union Fire Insurance Company of Pittsburgh, PA.'s Reply Brief in Support of Its Motion to Dismiss Plaintiff's Fourth Amended Complaint (docket entry 99).

The motions are now ripe for decision.

- 9 -

II.  <u>ANALYSIS</u>

A.  <u>Legal Standard</u>

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (internal quotation marks, brackets, and citation omitted).

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).  "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6).  See *Ashcroft v. Iqbal*,

556 U.S. 662, 678-79 (2009).  The court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.  The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id.*  The plausibility principle does not convert the Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss.  *Id.* at 678.

The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 665 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)).  The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" his arguments against the defendant "across the line from conceivable to plausible."  See *id.* at 679-80.

"In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)).  If the plaintiff, however, fails to attach a document referred to

in the complaint, the defendant may attach the document to its motion to dismiss if the documents are "referred to in the plaintiff's complaint and are central to [its] claim." *Id.* at 498-99 (internal quotation omitted).

## B.  Application

The defendants move to dismiss Thomas Mushroom's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief.  *See* Gallagher Motion; NUFIC Motion.  Because the court exercises diversity jurisdiction over these claims, *see* 28 U.S.C. § 1332, the court must apply Texas substantive law and federal procedural law.  *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

### 1.  *Breach of Contract*

The defendants contend that the court should dismiss both of Thomas Mushroom's breach of contract claims.  *See* Arthur J. Gallagher Risk Management Services, Inc.'s Memorandum of Law in Support of Motion to Dismiss Plaintiff's Fourth Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to Federal Rules of Civil Procedure 12(b)(6) ("Gallagher BIS") (docket entry 93) at 13-14; NUFIC Motion at 14-16.  In Texas, "[t]he essential elements of a breach of contract claim are:  (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App. -- Houston [14th Dist.] 2005, pet.

- 12 -

denied) (citation omitted).  "A breach of contract occurs when a party fails or refuses to perform an act that it expressly promised to do."  *Methodist Hospitals of Dallas v. Corporate Communicators, Inc.*, 806 S.W.2d 879, 882 (Tex. App. -- Dallas 1991, writ denied) (citation omitted).

Furthermore, to plead a breach of contract claim, a plaintiff must identify a specific provision of the contract that a defendant allegedly breached.  *Bayway Services, Inc. v. Ameri-Build Construction, L.C.*, 106 S.W.3d 156, 160 (Tex. App. -- Houston [1st Dist.] 2003, no pet.) ("A petition in an action based on a contract must contain a short statement of the cause of action sufficient to give fair notice of the claim involved, including . . . the substance of the contract which supports the pleader's right to recover.") (internal citation omitted).  Where the plaintiff fails to adequately allege that a defendant breached a contract, the plaintiff's claim must be dismissed under Rule 12(b)(6).  *Innova Hospital San Antonio, Limited Partnership v. Blue Cross & Blue Shield of Georgia, Inc.*, 995 F. Supp. 2d 587, 604 (N.D. Tex. 2014) (O'Connor, J.).

### a.  NUFIC

Thomas Mushroom argues that NUFIC breached the parties' contract, specifically alleging that:  (1) "in June and July 2020, there existed a valid, enforceable contract for insurance between [itself] and [NUFIC][;]" (2) "[t]hat policy required [NUFIC] to provide the [DOT] and/or government agencies with certain

forms, such as a BMC 91 or BMC 91X, and provide those agencies with proof that

[its] fleet was insured[;]" (3) it "fully performed its obligations and duties under the

contract[;]" (4) NUFIC "failed to make its mandatory report to the DOT regarding

the change in insurance coverage[;]" and (5) NUFIC's "failure to perform constituted

a material breach under the policy[.]"  Complaint at 4.

NUFIC, however, argues that Thomas Mushroom fails to allege sufficient facts

to plead a breach of contract claim because the policy that Thomas Mushroom bases

its claim on does not contain any provision that requires NUFIC to report to the

DOT that Thomas Mushroom's fleet is insured.  NUFIC Motion at 14-16.  First,

NUFIC points out that Thomas Mushroom, in its fourth amended complaint, fails to

identify the specific provision in the insurance policy that it argues requires that

NUFIC report to the DOT that Thomas Mushroom's fleet is insured.  *Id.* at 15.

Second, NUFIC attaches the parties' insurance policy and highlights that "the

provision of the [p]olicy on which [Thomas Mushroom] relies expressly relates to

'State DMV Proof of Coverage Reporting Requirements' based on state-specific

requirements implemented by 'various state DMV[s][]'" but that the specific

provision only "notes that 'various state DMVs presently mandate the filing of

specific data elements as State law[s] requires.'"  *Id.* (quoting Appendix in Support of

Defendant National Union Fire Insurance Company of Pittsburgh, PA.'s Motion to

Dismiss Plaintiff's Fourth Amended Complaint ("NUFIC Appendix") (docket entry

95) at 11) (underline in original).  NUFIC argues that "[i]n no way does the recognition of NUFIC's statutory reporting requirements to State DMVs make those requirements contractual or establish a contractual DOT reporting requirement."  *Id.*

Thomas Mushroom's response to NUFIC's motion to dismiss the breach of contract claim is a confusing mixture of arguments that can best be broken down into two contentions.  First, Thomas Mushroom avers that along with the parties "enter[ing] a business transaction – a contract or agreement to provide insurance[,]" Salinas's email also constitutes an additional "specific representation to perform an affirmative act on behalf of [Thomas Mushroom], for [its] benefit and at [its] request."  Thomas Mushroom's NUFIC Response at 4.  Thomas Mushroom then argues that it "does not allege [NUFIC] breached the insurance policy" but that, instead, NUFIC "breached the agreement of the [p]arties, which specifically included Renee Salinas's agreement to notify the [DOT]."  *Id.*  Second, Thomas Mushroom contends, somewhat contradictorily, that NUFIC "does not argue or refute" that "the [p]arties had a contractual relationship; it does not dispute that [Thomas Mushroom] performed its obligations under the contract; nor does it argue that [NUFIC] did not breach the provision to which [Thomas Mushroom's fourth amended complaint] cites or that [NUFIC's] breach did not cause [Thomas Mushroom's] damages."  *Id.* at 21.

The court agrees with NUFIC that Thomas Mushroom fails to allege sufficient facts to state a claim for relief based on NUFIC breaching the parties' contract. At the same time that Thomas Mushroom asserts two different arguments that contradict each other, neither is sufficient. First, Thomas Mushroom fails to identify a specific provision in the contract that it alleges NUFIC breached. *See* Complaint at 4. Thomas Mushroom merely pleads that the "policy required [NUFIC] to provide the [DOT] and/or government agencies with certain forms, such as a BMC 91 or BMC 91X, and provide those agencies with proof that [Thomas Mushroom's] fleet was insured[,]" but does not identify what provision in the policy supports this assertion. *Id.* This is fatal to Thomas Mushroom's claim, as a plaintiff must identify a specific contractual provision that the defendant allegedly breached to survive a 12(b)(6) motion to dismiss. See *Bayway Services, Inc.*, 106 S.W.3d at 160; *Innova Hospital San Antonio, L.P.*, 995 F. Supp. 2d at 604. Furthermore, NUFIC attaches the disputed insurance policy to its motion to dismiss and directs the court to the section that it believes Thomas Mushroom relies on, which contains only a requirement for NUFIC to report certain information to state DMVs, not to the DOT. NUFIC Motion at 15 (citing NUFIC Appendix at 11).

Second, in its response, Thomas Mushroom contradicts itself when it asserts that it "does not allege [NUFIC] breached the insurance policy[,]" but instead avers that NUFIC breached the parties' agreement based on Salinas's email where she

stated that she would notify the DOT of the change in insurance coverage.  Thomas Mushroom's NUFIC Response at 4.  In stating this, Thomas Mushroom directly undercuts the basis for its breach of contract claim, namely that NUFIC's failure to notify the DOT "constituted a material breach under the policy[.]"  Complaint at 4.

Moreover, Thomas Mushroom's allegation that the breach of contract is actually based on Salinas's email is not properly before the court.  Generally, allegations raised for the first time in response to a dispositive motion are not properly before the court.  *Fisher v. Metropolitan Life Insurance Company*, 895 F.2d 1073, 1078 (5th Cir. 1990).  Here, Thomas Mushroom argues, for the first time in its response to NUFIC's motion to dismiss, that NUFIC is liable for breach of contract based on Salinas's email.  Thomas Mushroom's NUFIC Response at 4.  In Thomas Mushroom's complaint, on the other hand, it contends that NUFIC breached the parties "contract for insurance" that required NUFIC to report to the DOT that Thomas Mushroom's fleet was insured, omitting any mention that NUFIC also breached any supplementary agreement based on Salinas's email.  Complaint at 4.  The court, therefore, will not consider Thomas Mushroom's new basis for how NUFIC is liable for breach of contract because Thomas Mushroom only raised it in response to NUFIC's motion to dismiss.

Accordingly, because Thomas Mushroom failed to identify a specific provision in the parties' contract that NUFIC breached, NUFIC has demonstrated that the

possible provision Thomas Mushroom relies on does not support its allegations, Thomas Mushroom contradicts itself in its response, and the court will not consider Thomas Mushroom's new basis for how NUFIC is liable for breach of contract, NUFIC's motion to dismiss Thomas Mushroom's breach of contract claim asserted against it for failure to state a claim is granted.

### b. Gallagher

Thomas Mushroom argues that Gallagher breached the parties' contract, specifically alleging that: (1) "[a]t all times relevant, there existed a valid, enforceable contract between [itself] and [Gallagher] for [Gallagher], as an insurance broker, to procure multiple and various lines of insurance coverage for [it;]" (2) it "performed its obligations and duties as required by the agreement[;]" (3) "[Gallagher] had a duty to obtain insurance coverage and other administrative tasks related to the procurement of this insurance[;]" (4) "[a]lthough [Gallagher] found an insurance, [it] failed to ensure that the DOT was notified of the change in insurance coverage[;]" and (5) "[Gallagher's] breach proximately caused [Thomas Mushroom's] damages." Complaint at 7.

Gallagher, however, argues that Thomas Mushroom fails to allege sufficient facts to plead a breach of contract claim. Gallagher BIS 13-14. First, Gallagher asserts that without citing to "supporting authority, [Thomas Mushroom] in conclusory allegations claims Gallagher had a duty to perform unpled *administrative*

*tasks*" but failed to allege sufficient facts that the parties "entered into a contract by which Gallagher agreed to perform these unspecified administrative tasks that would be separate and apart from quoting and seeking a carrier to bind insurance." *Id.* at 13 (emphasis in original).  Furthermore, Gallagher contends that case law rejects Thomas Mushroom's claim that a contract existed between the parties because Gallagher's "represent[ation] that it would place coverage has been rejected in a breach of contract context as nothing more than puffery by an insurance broker." *Id.*

Second, Gallagher argues that, as it is not a party to any insurance contract that Thomas Mushroom formed with any insurer, Thomas Mushroom has not pled sufficient facts to plausibly allege that the parties formed a contract whereby Gallagher was responsible for providing the DOT with notice of Thomas Mushroom's changed insurance.  Gallagher BIS at 13-14.  Third, Gallagher contends that Thomas Mushroom fails to plead sufficient facts to plausibly allege that there was a breach of contract, especially given that Thomas Mushroom "concedes that the requested insurance policies were placed." *Id.* at 14.

Thomas Mushroom responds to Gallagher's motion to dismiss the breach of contract claim with two arguments.  First, Thomas Mushroom avers that a valid and enforceable contract existed between itself and Gallagher.  Thomas Mushroom's Gallagher Response at 16.  Second, it contends that even if the parties contract did not require Gallagher to report to the DOT, "Cooper's promise to [Thomas

Mushroom's] officer voluntarily assumed this duty or shows that he knew it was a part of the contract." *Id.* Furthermore, Thomas Mushroom argues that its allegations related to Gallagher's breach of contract are "not based on pre-purchase puffery, nor upon [Thomas Mushroom's] contract and agreement with [AIG] or [NUFIC]." *Id.*

The court agrees with Gallagher that Thomas Mushroom fails to allege sufficient facts to state a claim for relief based on Gallagher breaching the parties' contract, largely for the same reasons that Thomas Mushroom's breach of contract claim that it asserts against NUFIC also fails. First, Thomas Mushroom fails to identify a specific provision in the alleged contract that it contends Gallagher breached. *See* Complaint at 7. Thomas Mushroom merely pleads that the parties' contract required Gallagher, "as an insurance broker, to procure multiple and various lines of insurance coverage for [Thomas Mushroom,]" and that Gallagher "had a duty to obtain insurance coverage and other administrative tasks related to the procurement of this insurance[,]" but that it failed to inform the DOT of Thomas Mushroom's changed insurance coverage. *Id.*

Thomas Mushroom, however, fails to identify what provision in the parties' contract supports these assertions, especially how an alleged duty to procure insurance coverage and other administrative tasks related to this procurement equates to a duty to inform the DOT of changed insurance coverage. See *id.* This is fatal to Thomas Mushroom's claim, as it needed to identify a specific provision in the

contract that Gallagher allegedly breached to survive a 12(b)(6) motion to dismiss. See *Bayway*, 106 S.W.3d at 160; *Innova*, 995 F. Supp. 2d at 604.

Moreover, Thomas Mushroom merely pleads labels, conclusions, and a formulaic recitation of a breach of contract claim. *See* Complaint at 7. Thomas Mushroom pleads that there was a "valid, enforceable contract" for Gallagher "to obtain insurance coverage and other administrative tasks related to the procurement of this insurance[,]" and then, without any more factual allegations, states that Gallagher breached the contract by failing "to ensure that the DOT was notified of the change in insurance coverage." *Id.* Although the court must accept well-pleaded facts as true and view them in the light most favorable to Thomas Mushroom, these are the exact type of statements that are "no more than conclusions" and, therefore, "not entitled to the assumption of truth." See *Iqbal*, 556 U.S. at 679.

Second, Thomas Mushroom's allegation that Gallagher's breach of contract could also be based on Cooper's email is not properly before the court. As stated above, generally, allegations raised for the first time in response to a dispositive motion are not properly before the court. *Fisher*, 895 F.2d at 1078. Here, Thomas Mushroom argues, for the first time in its response to Gallagher's motion to dismiss, that Gallagher could be liable for a breach of contract based on Cooper's email. Thomas Mushroom's Gallagher Response at 16. In Thomas Mushroom's complaint, on the other hand, it contends that Gallagher breached the "valid, enforceable

contract" that the parties had, omitting any mention of Cooper's email.  Complaint at 7.  The court, therefore, will not consider Thomas Mushroom's new basis for how Gallagher is liable for breach of contract because Thomas Mushroom only raised it in response to Gallagher's motion to dismiss.

Accordingly, because Thomas Mushroom has failed to identify a specific provision in the parties' contract that Gallagher breached, only pleads labels, conclusions, and a recitation of the breach of contract elements, and the court will not consider Thomas Mushroom's new basis for how Gallagher is liable for breach of contract, Gallagher's motion to dismiss Thomas Mushroom's breach of contract claim asserted against it for failure to state a claim is granted.

### 2.  *Negligence*

Both defendants contend that the court must dismiss each individual negligence claim that Thomas Mushroom asserts against them individually.  *See* Gallagher BIS at 10, 12; NUFIC Motion at 9, 13.  Thomas Mushroom first avers that NUFIC was negligent because Salinas "undertook a duty to exercise ordinary care and inform the DOT that NUFIC would be insuring [Thomas Mushroom's] transportation fleet" but "failed to notify the DOT of the change in [Thomas Mushroom's] insurance coverage."  Complaint at 3.  Thomas Mushroom states that "Salinas's failure to notify the DOT about the change constituted a breach of the duty of ordinary care she voluntarily assumed when she represented that she would

- 22 -

notify the DOT, a representation upon which [Thomas Mushroom] relied to its detriment[,]" causing Thomas Mushroom damages because it led to the DOT revoking or suspending its ability to operate its fleet. *Id.*

Thomas Mushroom next argues that Gallagher was negligent because it "owed [Thomas Mushroom] a duty to exercise ordinary care when it agreed to secure insurance coverage for [it], and agreed to contact [AIG] regarding its duty to notify the DOT of the change in insurance coverage." *Id.* at 6. Thomas Mushroom then lists various ways in which Gallagher itself or through its employees breached its duty to Thomas Mushroom. *Id.* Finally, Thomas Mushroom avers that, generally, the defendants' actions caused it actual and economic damages that "include, but are not limited to, lost profits, downtime expenses and losses, increased insurance premiums, loss of business goodwill and reputation, as well as other economic, financial, consequential and incidental damages." *Id.* at 7.[2]

a. Statute of Limitations and Relation-Back Doctrine

NUFIC argues that, specific to Thomas Mushroom's negligence claim asserted against only itself, the statute of limitations bars the claim and the relation-back doctrine does not apply to excuse Thomas Mushroom's failure to timely assert the

---

[2]    Although the court only analyzes the specific arguments related to Thomas Mushroom's negligence claims listed below, it has taken into consideration the parties' other arguments and concludes that it is unnecessary to evaluate them given that the economic loss rule is dispositive.

claim.  NUFIC Motion at 9-10.  Negligence claims are subject to a two-year statute of limitations.  TEX. CIV. PRAC. & REM. CODE § 16.003; *Waxler v. Household Credit Services, Inc.*, 106 S.W.3d 277, 279 (Tex. App. -- Dallas 2003, no pet.).  "[A] cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred."  *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996) (internal citations omitted).

An amended complaint that would otherwise be untimely under the applicable statute of limitations may, however, relate back to the original pleading under Federal Rule of Civil Procedure 15(c)(1).  *See* FED. R. CIV. P. 15(c)(1).  This rule states:

> An amendment to a pleading relates back to the date of the original pleading when:
>
> > (A) the law that provides the applicable statute of limitations allows relation back;
> >
> > (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out – in the original pleading; or
> >
> > (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> >
> > > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

- 24 -

> > (ii) knew or should have known that the
> > action would have been brought against it,
> > but for a mistake concerning the proper
> > party's identity.

FED. R. CIV. P. 15(c)(1).

Rule 15(c)(1), therefore, permits a plaintiff to correct a mistaken identity, but does not allow it to add a new defendant that was unknown at the time of filing.  See *Hazelton v. City of Grand Prairie, Texas*, 8 F. Supp. 2d 570, 581 (N.D. Tex. 1998) (Solis, J.) ("Plaintiff has not shown that he simply misidentified Moreno due to a mistake; instead, [p]laintiff did not know his identity at all.  Plaintiff has therefore failed to satisfy the misidentification situation which Rule 15(c)(3) seeks to address."); *Martin v. North Texas Healthcare Network*, No. 3:04-CV-1684-M, 2005 WL 639147, at *3 (N.D. Tex. Mar. 16, 2005) (Lynn, J.) ("Plaintiff apparently did not make a mistake when it filed suit against [the defendant].  Plaintiff merely failed to identify all of the possible defendants, but seeks to use the relation back concept under Rule 15(c) to allow him to proceed against parties he had not contemplated suing at the time he filed his initial petition.").

NUFIC first asserts that "[n]egligence claims are subject to a two-year statute of limitations" and "[d]espite the challenged conduct occurring in July 2019, [Thomas Mushroom] did not sue NUFIC until June 30, 2022 at the absolute earliest – more than two years from the date of the challenged conduct."  NUFIC Motion at

9.  Consequently, NUFIC avers, Thomas Mushroom did not comply with the statute of limitations.  *Id.*

NUFIC then argues that there are two reasons why "[t]he relation back doctrine does not permit [Thomas Mushroom] to circumvent the statue of limitations[.]"  NUFIC Motion at 10.  First, NUFIC avers that Thomas Mushroom's "First Amended Complaint, which was the first pleading to name NUFIC as a party, did not change a party or the naming of a party, it <u>added</u> another party."  *Id.* (underline in original).  NUFIC then contends that the relation-back doctrine only applies when a plaintiff amends its pleading so as to change the party to be sued or the name of a party to be sued, but not where, as Thomas Mushroom does here, the plaintiff "merely add[s] a new party and continue[s] to assert claims against the original party."  *Id.* (internal citations and quotation omitted).

Second, NUFIC contends that Thomas Mushroom "made no mistake concerning the proper party's identity in electing not to sue NUFIC despite having actual knowledge that [it] issued the [p]olicy and that any communications relevant to the dispute were with <u>employees of NUFIC, not [AIG]</u>."  *Id.* (internal quotation marks omitted) (underline in original).  NUFIC avers that this does not constitute a "'mistake' as to the proper party's identity under Rule 15(c)(1)(C)."  *Id.* at 11. Instead, Thomas Mushroom merely asserted "entirely new claims against [NUFIC] while maintaining [] previously asserted claims against the other defendants[,]"

- 26 -

which is not sufficient to establish a mistake under the relation-back doctrine. *Id.*
(internal quotation omitted) (brackets in original).  Thomas Mushroom's "conscious
choice" to sue AIG rather than NUFIC, therefore, "does not constitute a mistake"
under the relation-back doctrine. *Id.* at 11-12 (internal quotation omitted).

Thomas Mushroom does not refute that, on the face of its fourth amended
complaint, it has not alleged sufficient facts to plausibly allege that it complied with
the two-year statute of limitations for a negligence claim. *See* Thomas Mushroom's
NUFIC Response at 14-19.  Instead, Thomas Mushroom argues that the statute of
limitations does not bar its negligence claim that it asserts against NUFIC because,
under Rule 15(c), the claim relates back to its original petition that it filed on July 1,
2021. *Id.* at 14.  Specifically, Thomas Mushroom contends that its negligence claim
meets Rule 15(c)'s requirements because:  "(1) the claims arise out of the same
conduct – [] Salinas's misrepresentation– complained of in [its] Original Petition, (2)
[] NUFIC timely received notice of [its] claims against [AIG], and (3) [] NUFIC
knew that but for [its] mistake as to the identity of [] Salinas's employer [it] would
have sued NUFIC." *Id.*  Thomas Mushroom points out that NUFIC does not
challenge whether it timely received notice of the lawsuit; whether the amended
claim arises from the same conduct, transaction, or occurrence as the original claim;
or if NUFIC and AIG share "an identity of interest." *Id.* at 14-15.

Furthermore, Thomas Mushroom challenges NUFIC's two arguments as to why the relation-back doctrine does not apply.  *See* Thomas Mushroom's NUFIC Response at 15-19.  First, Thomas Mushroom contends that in its fourth amended complaint it did not just add NUFIC as a defendant, but instead, "after learning the identity of [] Salinas's employer, [it] substituted NUFIC in place of [AIG] for" its negligence and DTPA and insurance code violations claims.  *Id.* at 17.  As such, Thomas Mushroom "did not add new defendants or assert new claims – [it] simply substituted the party against whom the claim was asserted."  *Id.* at 17-18.  Second, Thomas Mushroom argues that the record supports that it "sued [AIG] under a 'mistaken belief[,]' . . . that [it] was wrong about the entity from which it purchased insurance[,]" and it has "continually reiterated its mistaken belief that [] Salinas was employed by [AIG]" as opposed to NUFIC.  *Id.* at 18.  Thomas Mushroom also points out that it was not until March 2023 that it affirmatively learned who employed Salinas, when AIG produced an affidavit demonstrating that NUFIC, not AIG, employed her, and at that time substituted NUFIC for AIG in both its negligence and DTPA and insurance code violations claims.  *Id.* at 19.

The court agrees with Thomas Mushroom that the relation-back doctrine applies to its negligence claim asserted against NUFIC.  The parties do not dispute that:  (1) Thomas Mushroom's claims asserted against NUFIC arise out of the same conduct, transaction, or occurrence as its claims asserted against AIG; and (2) NUFIC

received timely notice of the lawsuit so that it will not be prejudiced in defending it on the merits.  *See* NUFIC Motion at 9-12; Thomas Mushroom's NUFIC Response at 14-19.[3]  As such, the relevant questions are whether:  (1) Thomas Mushroom changed the party or the name of the party against whom it asserts its negligence claim; and (2) NUFIC knew or should have known that Thomas Mushroom would have brought this action against NUFIC but for a mistake concerning the proper party's identity.  *See* FED. R. CIV. P. 15(c)(1).

Thomas Mushroom's fourth amended complaint alleges negligence, breach of contract, and DTPA and insurance code violations claims again NUFIC and removed AIG as a defendant from the entire lawsuit.  *See* Complaint.  Furthermore, Thomas Mushroom's motion for leave to file its fourth amended complaint asked the court for leave to "substitute [] NUFIC in place of [AIG]" because it believed that the

---

[3]      Even if NUFIC did dispute these elements, it would be futile. Regarding whether the fourth amended complaint arises out of the same conduct, transaction, or occurrence as the original petition, both appear to arise out of Thomas Mushroom's allegation that one, or both, of NUFIC or Gallagher are liable for assuring Thomas Mushroom that they would inform the DOT of its changed insurance, but failed to do so.  *See* Original Petition at 3 (alleging at the time of the original petition that either AIG or Gallagher failed to inform the DOT); Complaint at 2-3 (contending that NUFIC, substituted for AIG, or Gallagher failed to inform the DOT).  Furthermore, AIG (while it was in the lawsuit) and NUFIC shared attorneys.  *See* Notice of Removal at 5; NUFIC First Motion to Dismiss at 9.  "[T]he requisite notice of an action can be imputed to a new defendant through [its] attorney who also represented the party or parties originally sued."  *Kirk v. Cronvich*, 629 F.2d 404, 408 (5th Cir. 1980) (internal citations omitted).  NUFIC, therefore, was timely aware of this lawsuit under Rule 15.

affidavit that AIG submitted in support of its recent motion to dismiss proved that when "Salinas represented she would notify the [DOT] about the change in [Thomas Mushroom's] insurance coverage, [] Salinas was employed by [] NUFIC, not by [AIG.]"  Plaintiff's Amended Brief in Support of Its Opposed Motion for Leave (docket entry 84) at 1.  Thomas Mushroom reaffirms this belief in its response to NUFIC's motion to dismiss.  *See* Thomas Mushroom's NUFIC Response at 17-18 ("In [Thomas Mushroom's] Fourth Amended Complaint, after learning the identity of [] Salinas's employer, [it] substituted NUFIC in place of [AIG] for" all the claims it had originally asserted against AIG.  Thomas Mushroom "did not add new defendants or assert new claims – [it] simply substituted the party against whom the claim[s] [were] asserted.").  The court, therefore, agrees that, looking at the fourth amended complaint, Thomas Mushroom substituted, rather than added, NUFIC in AIG's place and that but for a mistake as to the identity of which company employed Salinas, it would have asserted these claims against NUFIC from the beginning.

The court also concludes that it does not matter that Thomas Mushroom's first, second, and third amended complaints might not have sufficiently complied with Rule 15 in order to relate back to the original petition.  Much of NUFIC's argument as to why the relation-back doctrine should not apply focuses on Thomas Mushroom's earlier pleadings where Thomas Mushroom did not fully substitute NUFIC for AIG as a defendant, but, instead, added NUFIC as a defendant alongside

- 30 -

AIG.  *See* NUFIC Motion at 10 ("[Thomas Mushroom's] First Amended Complaint, which was the first pleading to name NUFIC as a party, did not change a party or the naming of a party, it <u>added</u> another party[.]") (underline in original); *id.* at 12 (discussing how Thomas Mushroom did not make a mistake in suing AIG in its earlier pleadings but instead made a conscious choice to sue AIG instead of NUFIC.).

Federal Rule of Civil Procedure 15(c)(1)'s text states that "[a]n amendment to a *pleading* relates back to the date of the *original pleading*."  FED. R. CIV. P. 15(c)(1) (emphasis added).  Although the rule does not specify whether the word "pleading" refers to the first and each subsequent amended complaint following the "original pleading" or complaint, the court concludes that a plaintiff need only comply with Rule 15 regarding its recent and operative amended complaint.  See *Al-Dahir v. Federal Bureau of Investigations*, 454 Fed. Appx 238, 241-44 (5th Cir. 2011) (per curiam) (analyzing the plaintiff's third amended and operative complaint to decide whether the relation-back doctrine applied, and only reviewing the plaintiff's earlier complaints to determine if the third amended complaint complied with Rule 15(c)).  It would seem illogical that at the stage of Thomas Mushroom's fourth amended complaint, that the court should also analyze Thomas Mushroom's first, second, and third amended complaints to see if they comply with the relation-back doctrine, as those documents are no longer controlling.

Had the court analyzed NUFIC's previous statute of limitations argument, which it raised prior to Thomas Mushroom amending one of its previous complaints, the court might have granted that motion because the relation-back doctrine might not have applied.  The court, however, likely would have dismissed any defective claims without prejudice, meaning that Thomas Mushroom could have amended its complaint and likely would have ended up with an amended complaint that complied with Rule 15 and that looks similar to its current fourth amended complaint.

Furthermore, the relation-back doctrine's principles support the notion that the court assess each complaint individually to determine whether the amended complaint relates back to the last timely filed complaint.  Rule 15(c)'s text does not include a requirement that each amended complaint must successfully relate back for subsequent amended complaints to relate back.  *See* FED. R. CIV. P. 15(c). Furthermore, in 1991, the Rules Committee clarified that Rule 15(c) is intended to reflect the "liberal pleading practices secured by Rule 8[,]" such that a plaintiff may amend its complaint "at any time to correct a formal defect such as a misnomer or misidentification" so long as the intended defendant is timely notified of the lawsuit and the amended claim arises out of the conduct, transaction, or occurrence set out in the original pleading.  FED. R. CIV. P. 15, Advisory Committee Notes, 1991 Amendment, Paragraph (c)(3).  As such, requiring that Thomas Mushroom's first, second, and third amended complaints also adhere to Rule 15(c) so that the relation-

back doctrine can apply to its fourth amended complaint would undermine the liberal pleading practices that Rule 15(c) is intended to reflect.

Consequently, any deficiencies in Thomas Mushroom's first, second, or third amended complaints do not prevent the court from applying the relation-back doctrine to the fourth amended complaint, and the court concludes that the relation-back doctrine does apply to the negligence claim that Thomas Mushroom's asserts against NUFIC its fourth amended complaint

b. Economic Loss Rule

NUFIC argues that even if the relation-back doctrine does apply, the economic loss rule bars Thomas Mushroom's negligence claim.  NUFIC Motion at 14. Although Gallagher does not raise this issue, the rule applies equally to the negligence claim that Thomas Mushroom asserts against Gallagher.  "[T]he economic loss rule generally prevents recovery in tort for purely economic damage unaccompanied by injury to persons or property."  *Golden Spread Electric Cooperative, Inc. v. Emerson Process Management Power & Water Solutions, Inc.*, 954 F.3d 804, 808 (5th Cir. 2020).  "The Texas Supreme Court has unequivocally adopted a broad interpretation of the economic loss rule."  *Memorial Hermann Healthcare System, Inc. v. Eurocopter Deutschland, GMBH*, 524 F.3d 676, 678 (5th Cir. 2008).  It has also "rejected a formulation of the economic loss rule that 'says you can never recover economic damages for a tort claim.'"  *JPMorgan Chase Bank, N.A. v. Professional Pharmacy II*, 508

- 33 -

S.W.3d 391, 422 (Tex. App. -- Fort Worth 2014, no pet.) (quoting *Sharyland Water Supply Corporation. v. City of Alton*, 354 S.W.3d 407, 418 (Tex. 2011)).

"To determine whether the claim sounds in contract or negligence, and thus whether the economic loss rule applies, courts analyze the conduct at issue and the nature of the injury." *Sagebrush Solutions, LLC v. David-James, LLC*, No. 3:14-CV-2701-G, 2015 WL 1011789, at *2 (N.D. Tex. Mar. 9, 2015) (Fish, J.) (citation omitted). "Yet, 'when the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone.'" *Id.* (quoting *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex. 1986)). "In such a situation, the plaintiff must show an injury independent of damages for breach of contract in order to recover on the tort claim." *Id.* (citation omitted). Two particular policy considerations underlie the economic loss rule: (1) "[p]urely economic harms proliferate widely and are not self-limiting in the way that physical damage is, possibly leading to indeterminate liability and pressure to avoid economic activity altogether;" and (2) "the risks of economic harms are better suited to allocation by contract" because the parties are capable of "consider[ing] their positions and manag[ing] risks ahead of time." *Golden Spread*, 954 F.3d at 808 (citation omitted).

Under these policy considerations, the Supreme Court of Texas has held that "[w]here contracts might readily have been used to allocate the risk of a loss . . . a duty to avoid the loss is unlikely to be recognized in tort—not because the economic

loss rule applies, but simply because courts prefer, in general, that economic losses be allocated by contract where feasible." *LAN/STV v. Martin K. Eby Construction Company, Inc.*, 435 S.W.3d 234, 248 (Tex. 2014) (internal quotation omitted). One Court of Appeals of Texas also held that "[i]n operation, the [economic loss rule] restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence." *JPMorgan Chase Bank*, 508 S.W.3d at 422. See also *Golden Spread Electric Cooperative*, 954 F.3d at 808 ("Thus, the economic loss rule also serves to enforce the boundary between tort and contract, encouraging parties to contract ahead of time how to allocate risks, and to ensure that those allocations will not be undone later by the application of tort law.").

The court agrees that the economic loss rule bars Thomas Mushroom's negligence claims that it asserts against NUFIC and Gallagher. Thomas Mushroom contends that at all relevant times it has had a valid, enforceable contract with NUFIC for insurance. Complaint at 4. In its negligence claim that it asserts against NUFIC, however, Thomas Mushroom argues that NUFIC was negligent because Salinas's failure to notify the DOT of Thomas Mushroom's change in insurance caused the DOT to "revoke[] or suspend[]" its "authority to operate[.]" *Id.* at 3.

Thomas Mushroom also contends that at all relevant times it has had a valid, enforceable contract with Gallagher, "as an insurance broker, to procure multiple and

various line of insurance coverage[.]" *Id.* at 7.  In its negligence claim that it asserts against Gallagher, however, Thomas Mushroom avers that Gallagher was negligent in multiple ways stemming from its "duty to exercise ordinary care when it agreed to secure insurance coverage for" Thomas Mushroom "and agreed to contact [AIG] regarding its duty to notify the DOT of the change in insurance coverage." *Id.* at 6. Furthermore, Thomas Mushroom avers that its damages, stemming from all of its claims, "include, but are not limited to, lost profits, downtime expenses and losses, increased insurance premiums, loss of business goodwill and reputation, as well as other economic, financial, consequential and incidental damages." *Id.* at 7.

Consequently, the injuries that Thomas Mushroom pleads are economic losses that are the subject of its contracts with the defendants.  The negligence that Thomas Mushroom argues NUFIC and Gallagher committed stem from the defendants' duties under their contracts, namely to provide insurance and to procure insurance, respectively.  Although the defendants' employees gave separate "assurances" to Thomas Mushroom regarding them notifying the DOT, the damages that Thomas Mushroom argues it has suffered all stem from the defendants' initial contracts.  Had Thomas Mushroom not entered into these contracts with the defendants, there would have been no relationship between the parties and no reason for the

defendants to have made any assurances to Thomas Mushroom.[4]  Furthermore, Thomas Mushroom has not asserted that the defendants' alleged negligence damaged any of its property or personally injured anyone, making the damages purely economic.  *See* Complaint.  Consequently, Thomas Mushroom has not shown an injury independent of damages for breach of contract.

Thomas Mushroom could have considered its position in advance and amended its contracts with the defendants to create specific contractual obligations that required the defendants to report to the DOT, thereby mutually allocating the risk of loss and managing the risk ahead of time; but, it chose not to.  Even if the defendants' actions might reasonably be viewed as negligent, Thomas Mushroom's economic losses are associated with its contractual relationships with the defendants and, therefore, it is restricted to contractual remedies for those economic losses. Accordingly, because the economic loss rule bars Thomas Mushroom's negligence claims, the defendants' motions to dismiss Thomas Mushroom's negligence claim asserted against each defendant respectively are granted.

---

[4]     Moreover, Thomas Mushroom's breach of contract claims are premised on the defendants having a contractual duty to inform the DOT of the changed insurance.  Complaint at 4, 7.  Although the court has concluded that Thomas Mushroom failed to allege sufficient facts to state breach of contract claims, Thomas Mushroom cannot now argue that any economic losses arising out of the negligence claims, which are premised on the defendants making extra assurances to inform the DOT of the changed insurance, are not the subject of its contracts with NUFIC and Gallagher.

3. *Negligent Undertaking*

Thomas Mushroom also asserts a negligent undertaking cause of action against Gallagher. Complaint at 6. Thomas Mushroom's claim consists of three sentences, stating merely that Gallagher "assumed a duty to inform the DOT of [Thomas Mushroom's] change in insurance coverage when it informed [Thomas Mushroom] it would so do" but "failed to perform or complete this obligation" and this "breach proximately caused [Thomas Mushroom's] damages." *Id.* at 6-7. Thomas Mushroom also asserts that Gallagher's negligent undertaking caused the same damages as the rest of its claims, namely purely economic damages. *Id.* at 7.

Because courts have routinely applied the economic loss rule to negligent undertaking causes of action, the court concludes that the economic loss rule bars Thomas Mushroom's negligent undertaking claim. See, *e.g.*, *Small Ventures USA, Limited Partnership v. Rizvi Traverse Management, LLC*, No. H-11-3072, 2013 WL 4773965, at *2 n.3 (S.D. Tex. Sept. 4, 2013); *Memorial Hermann Healthcare System Inc. v. Eurocopter Deutschland, GMBH*, No. G-06-438, 2007 WL 2446787, at *2 (S.D. Tex. Aug. 23, 2007), *aff'd*, *Memorial Hermann Healthcare System*, 524 F.3d at 679; *Longmire v. Wells Fargo Bank, N.A.*, No. 3:16-CV-2367-M-BN, 2017 WL 4075187, at *6 (N.D. Tex. Aug. 16, 2017) (Horan, M.J.), report and recommendation adopted, 2017 WL 4022888 (N.D. Tex. Sept. 13, 2017). Accordingly, Gallagher's motion to dismiss Thomas Mushroom's negligent undertaking claim is granted.

4. *DTPA and Insurance Code Violations*[56]

a. DTPA

The defendants further argue that the court should dismiss Thomas

Mushroom's DTPA claim under Rule 12(b)(6) for failure to state a claim for relief.

*See* Gallagher BIS at 3-4, 9-10; NUFIC Motion at 17. The DTPA makes unlawful

any "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or

commerce." TEX. BUS. & COMM. CODE § 17.46(a). "To recover under the DTPA, the

plaintiff must show that: (1) he is a consumer; (2) the defendant engaged in a false,

misleading, or deceptive act; and (3) the act constituted a producing cause of the

plaintiff's damages." *Ramirez v. Government Employees Insurance Company*, 548 S.W.3d

761, 770 (Tex. App. -- El Paso 2018, pet. denied) (quotation omitted). The DTPA

defines a consumer as any "individual, partnership, [or] corporation . . . who seeks or

acquires by purchase or lease, any goods or services[.]" TEX. BUS. & COMM. CODE

---

[5]      Although the court only analyzes the specific arguments related to
Thomas Mushroom's DTPA and insurance code violations claims listed below, it has
taken into consideration the parties' other arguments and concludes that it is
unnecessary to evaluate them given that Thomas Mushroom's DTPA and insurance
code violations claim fails to meet the lenient Rule 12(b)(6) standard.

[6]      As with the negligence claim, NUFIC argues that the statute of
limitations bars Thomas Mushroom's DTPA and insurance code violations claim and
that the relation-back doctrine does not apply to save the claim. NUFIC Motion at
16-17. Applying the same analysis and logic that applies to Thomas Mushroom's
negligence claim, the court concludes that the relation-back doctrine does apply to
the DTPA and insurance code violations claim that Thomas Mushroom asserts
against NUFIC in its fourth amended complaint, and, therefore, the statute of
limitations does not bar the claim. See, *supra* at 23-33.

§ 17.45(4).  Furthermore, the DTPA includes a list of "false, misleading, or deceptive acts or practices" that constitute violations of section 17.46(a).  *Id.* § 17.46(b).

Thomas Mushroom contends that the defendants' "promise that they would inform the DOT about the change in insurance coverage" but failure to do so equates to two "false, misleading, or deceptive acts or practices"that are listed in the DTPA: a representation (1) "that the insurance services purchased were of a particular standard, quality, or grade when they were in fact that of another in violation of TEX. BUS. & COMM. CODE § 17.46(b)(7);" and (2) "that a warranty conferred rights, remedies, or obligations which it did not have" in violation of section 17.46(b)(20). Complaint at 4-5.

NUFIC, however, challenges the sufficiency of Thomas Mushroom's fourth amended complaint regarding the second DTPA cause of action element and argues that Thomas Mushroom "merely cop[ies] the statutory language and recit[es] the elements of the claim" but does not allege any facts showing that NUFIC "performed any act that could be construed as a violation of . . . the DTPA."  NUFIC Motion at 19 (internal quotation omitted).  Gallagher similarly avers that Thomas Mushroom "does not allege any facts or actual 'misrepresentations' made by Gallagher to support a *viable* cause of action under the DTPA" but, instead, "merely recites statutory provisions in support of the DTPA . . . cause[] of action."  Gallagher BIS at 9 (emphasis in original).

- 40 -

Thomas Mushroom responds, separately, to each defendant, arguing that the court should deny the motions because it has alleged enough facts to state a claim for relief for the defendants' DTPA violations.  Thomas Mushroom's NUFIC Response at 21-22; Thomas Mushroom's Gallagher Response at 12-13.  Thomas Mushroom does not directly respond to NUFIC's argument that its fourth amended complaint fails to allege sufficient facts to state a DTPA claim, but does state that "the representation on which this cause of action is based – [] Salinas's representation that she would notify the [DOT] – is actionable as a post-purchase representation because [its] officer relied upon the representation to [its] detriment, and it was a producing cause of [its] damages."  Thomas Mushroom's NUFIC Response at 22.  Thomas Mushroom responds to Gallagher by arguing that:  it "has alleged that [Gallagher's] employee [] Cooper made a specific misrepresentation about the administration and activation of the policy that turned out to be untrue and caused [it] to suffer damages[;]" and "[b]ecause Texas law imposes liability under [the] statute[] when an insurance agent or broker misrepresents the terms of the policy, the allegations in" Thomas Mushroom's fourth amended complaint entitle it to relief under the DTPA.  Thomas Mushroom's Gallagher Response at 12-13.

The court agrees with the defendants that Thomas Mushrooms's fourth amended complaint lacks sufficient facts to state a plausible claim for relief under the DTPA.  Regarding the second DTPA cause of action element, engaging in a false,

misleading, or deceptive act, Thomas Mushroom merely pleads labels, conclusions, and a formulaic recitation of two listed examples of DTPA violations.  Complaint at 4-5.  Outside of stating that the defendants "knowingly violated the DTPA" by making a "promise that they would inform the DOT about the change in insurance coverage, a promise upon which [Thomas Mushroom] relied to its detriment," Thomas Mushroom simply recites the elements for two "false, misleading, or deceptive act[s]" without more.  See *id.*  Although the court must accept well-pleaded facts as true and view them in the light most favorable to Thomas Mushroom, these are the exact type of statements that are "no more than conclusions" and, therefore, "not entitled to the assumption of truth."  See *Iqbal*, 556 U.S. at 679.

Furthermore, even taking into consideration these statements, Thomas Mushroom's one brief paragraph regarding the second DTPA element does not nudge its arguments against the defendants "across the line from conceivable to plausible." See *id.* at 679, 683.  Thomas Mushroom has done nothing to illustrate, at a basic level, how the defendants' alleged statements, that they would inform the DOT about the change in insurance coverage, equate to either false representations about the "standard, quality, or grade" of the insurance or "rights, remedies, or obligations" of a warranty.  *See* Complaint at 5.  Instead, it appears that the defendants' statements relate only to actions that the defendants might have undertaken in relation to the insurance, not statements about the insurance policy's terms and

- 42 -

benefits.  Although Thomas Mushroom did not need to plead detailed factual allegations, it did need to have pled enough facts to "raise a right to relief about the speculative level[.]"  *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

Accordingly, because Thomas Mushroom has not alleged sufficient facts to state a claim for relief against both defendants under the DTPA, the defendants' motions to dismiss Thomas Mushroom's DTPA claim against each of them for failure to state a claim are granted.

### b.  Insurance Code Violations

The defendants also contend that the court should dismiss Thomas Mushroom's insurance code violations claim under Rule 12(b)(6) for failure to state a claim for relief.  *See* Gallagher BIS at 3-4, 9-10; NUFIC Motion at 21-22.  Thomas Mushroom alleges that the defendants violated two different subsections of the Texas Insurance Code, specifically sections 541.051 and 541.061.  Complaint at 5. Thomas Mushroom did not, however, specify which exact parts of sections 541.051 and 541.061 it alleges the defendants violated, see *id.*, leaving the court to guess as to Thomas Mushroom's claims.

In relevant part, section 541.051 provides that:

> It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to:

>(1) make, issue, or circulate or cause to be made, issued, or circulated an estimate, illustration, circular, or statement misrepresenting with respect to a policy issued or to be issued:
>
>>(A) the terms of the policy;
>>
>>(B) the benefits or advantage promised by the policy; or
>>
>>(C) the dividends or share of surplus to be received on the policy . . .
>
>>* * *
>
>(5) make a misrepresentation to a policyholder insured by any insurer for the purpose of inducing or that tends to induce the policyholder to allow an existing policy to lapse or to forfeit or surrender the policy.

TEX. INS. CODE § 541.051(1),(5).  Section 541.061 provides that "[i]t is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by" doing any of the following:

>(1) making an untrue statement of material fact;
>
>(2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;
>
>(3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;
>
>(4) making a material misstatement of law; or

- 44 -

> (5) failing to disclose a matter required by law to be
> disclosed, including failing to make a disclosure in
> accordance with another provision of this code.

*Id*. at § 541.061.

Thomas Mushroom's argument that the defendants violated Texas Insurance Code sections 541.051 and 541.061 rest primarily on the same allegation: that the defendants made "representations directly to [Thomas Mushroom] or [made] representations for which it was foreseeable that [Thomas Mushroom] would learn of and rely upon, that they would take care of [Thomas Mushroom's] officer's concerns and would inform the DOT" about the change in insurance coverage. Complaint at 5. Thomas Mushroom contends that Cooper made these representations on behalf of Gallagher and Salinas made these representations on behalf of NUFIC. *Id.*

Furthermore, Thomas Mushroom avers that the defendants' representations violated: (1) Texas Insurance Code section 541.051 because they induced Thomas Mushroom "to allow its policy to lapse, or induc[ed] [it] into effectively forfeiting the policy benefits[;]" and (2) Texas Insurance Code Section 541.061 because they misrepresented "the policy, including making untrue statements of material fact, leaving out a material fact so that other statements are rendered misleading, and making a statement in a way ('take care of it'), such that it would lead a reasonably prudent person to a false conclusion about a material fact." Complaint at 5.

NUFIC, however, challenges the sufficiency of Thomas Mushroom's insurance code violations claim, arguing that, similar to the DTPA claim, Thomas Mushroom's "claim is a threadbare recitation of the elements of a claim that is insufficient to overcome a Rule 12(b)(6) motion to dismiss[,]" and any "alleged misrepresentation does not relate to the terms of the [p]olicy[,]" because "Salinas's alleged promise to 'inform the DOT' does not 'misrepresent an insurance policy.'"  NUFIC Motion at 21-23 (quoting TEX. INS. CODE § 541.061).  Gallagher similarly avers that Thomas Mushroom "does not allege any facts or actual 'misrepresentations' made by Gallagher to support a *viable* cause of action under the . . . [i]nsurance [c]ode" but, instead, "merely recites statutory provisions in support of" its claim.  Gallagher BIS at 9 (emphasis in original).

Thomas Mushroom responds, separately, to each defendant's motion to dismiss, arguing that the court should deny the motions because Thomas Mushroom has alleged enough facts to state a claim for relief for the defendants' insurance code violations.  Thomas Mushroom's Gallagher Response at 12-14; Thomas Mushroom's NUFIC Response at 21-22.  Thomas Mushroom, again similar to its DTPA claim, does not directly respond to any of NUFIC's arguments regarding its deficient insurance code claim, but does very briefly mention that the court should not dismiss it because "the representation on which this cause of action is based – [] Salinas's representation that she would notify the [DOT] – is actionable as a post-purchase

representation because [its] officer relied upon the representation to [its] detriment, and it was a producing cause of [its] damages." Thomas Mushroom's NUFIC Response at 22.

Thomas Mushroom responds to Gallagher by arguing that Thomas Mushroom: "has alleged that [Gallagher's] employee [] Cooper made a specific misrepresentation about the administration and activation of the policy that turned out to be untrue and caused [it] to suffer damages[;]" and that after identifying Cooper's misrepresentation about the policy, Thomas Mushroom points to two insurance code provisions "that [it] contends [Gallagher's] employee's misrepresentation violated[.]" Thomas Mushroom's Gallagher Response at 12, 14.

The court agrees with the defendants that Thomas Mushrooms's fourth amended complaint lacks sufficient facts to state a plausible claim for relief because of insurance code violations, since it merely pleads labels, conclusions, and a formulaic recitation of two Texas Insurance Code sections. *See* Complaint at 4-5. Outside of stating that the defendants made "representations directly to [Thomas Mushroom] or ma[de] representations for which it was foreseeable that [Thomas Mushroom] would learn of and rely upon, that they would take care of [Thomas Mushroom's] officer's concerns and would inform the DOT[,]" Thomas Mushroom simply recites the elements for two insurance code sections without more. *Id.* at 5. Although the court must accept all well-pleaded facts as true and view them in the

- 47 -

light most favorable to Thomas Mushroom, these are the exact type of statements that are "no more than conclusions" and, therefore, "not entitled to the assumption of truth."  See *Iqbal*, 556 U.S. at 679.

Furthermore, even taking into consideration these statements, Thomas Mushroom's brief pleading regarding the defendants' alleged violations does not nudge its arguments against the defendants "across the line from conceivable to plausible."  See *id.* at 679, 683.  Thomas Mushroom has done nothing to illustrate, at a basic level, how the defendants' alleged statements, that they would inform the DOT about the change in insurance coverage, either:  (1) induced Thomas Mushroom into letting its insurance policy lapse or forfeit its policy benefits; or (2) equated to misrepresentations about Thomas Mushroom's insurance policy; untrue statements regarding material facts about the insurance policy; statements that withheld material facts related to the insurance policy so as to make other statements misleading; or statements that would lead Thomas Mushroom to a false conclusion about a material fact regarding the insurance policy.  *See* Complaint at 5.

Instead, it appears that the defendants' statements relate only to actions that the defendants might have undertaken in relation to the insurance, not statements about the insurance policy's terms and benefits.  Although Thomas Mushroom did not need to have plead detailed factual allegations, it did need to have pled enough

facts to "raise a right to relief above the speculative level[.]" *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

Accordingly, because Thomas Mushroom has not alleged sufficient facts to state a claim for relief against both defendants because of insurance code violations, the defendants' motions to dismiss Thomas Mushroom's insurance code violations claim against each of them for failure to state a claim is granted.

## III.  CONCLUSION

For the reasons stated above, the plaintiff's claims are **DISMISSED** with prejudice.[7]  Judgment will be entered in favor of Gallagher and NUFIC.

---

[7]      Federal Rule of Civil Procedure 15(a) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  FED. R. CIV. P. 15(a).  Whether a motion to amend should be granted is within the discretion of the district court.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  When exercising its discretion, the court may consider such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc."  *Id*.  The Fifth Circuit has stated, however, that "'discretion' may be a misleading term, for rule 15(a) severely restricts the judge's freedom" to deny leave to amend.  *Dussouy v. Gulf Coast Investment Corporation*, 660 F.2d 594, 597 (5th Cir. 1981).  Rule 15(a) "evinces a bias in favor of granting leave to amend."  *Id*.

Although Rule 15(a) may favor granting leave to amend, the court has previously allowed Thomas Mushroom to amend its complaint four different times and it has repeatedly failed to cure apparent deficiencies in its complaints.  Furthermore, granting Thomas Mushroom leave to amend its complaint a fifth time would cause undue delay and unduly prejudice the defendants, who have already had to answer the previous complaints and file multiple motions to dismiss in response.  Consequently, the court grants the defendants' motions to dismiss with prejudice,

(continued...)

**SO ORDERED**.

September 11, 2023.

A. JOE FISH
**Senior United States District Judge**

---

[7](...continued)
thereby denying Thomas Mushroom leave to amend its complaint a fifth time.